## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) KIMBERLE THOMPSON and<br>2) JUANITA HILL, as Co-Administrators of the<br>3) Estate of BENNIE JOE EDWARDS, deceased,<br><br>   Plaintiffs,<br><br>   v.<br><br>1) SERGEANT KEITH DUROY; 2) SERGEANT CLIFFORD HOLMAN; and the 3) CITY OF OKLAHOMA CITY,<br><br>   Defendants. | Civil Case No.: CIV-21-1133-JD<br><br><br><br><br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, KIMBERLE THOMPSON and JUANITA HILL, as Co-Administrators of the Estate of BENNIE EDWARDS, deceased, by and through their attorneys, BEN CRUMP LAW, PLLC, ROMANUCCI & BLANDIN, LLC, and GRAVES MCLAIN, PLLC and in complaining against Defendants, SERGEANT KEITH DUROY; SERGEANT CLIFFORD HOLMAN; and the CITY OF OKLAHOMA CITY, pleading hypothetically and in the alternative, state as follows:

### JURY DEMAND

1. The Plaintiffs hereby demand trial by jury.

### NATURE OF ACTION

2. This action arises out of the death of BENNIE EDWARDS caused by Defendants on December 11, 2020 near the 2100 Block of West Hefner Road, Oklahoma City, Oklahoma.

1

3. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the officer-involved death of Plaintiffs' decedent, BENNIE EDWARDS.

## JURISDICTION AND VENUE

4. This is an action for damages to provide for compensation and redress for the deprivation of rights and remedies as provided by 42 U.S.C. § 1983 and § 1988, the Fourth and Fourteenth Amendments to the Constitution of the United States of America, the Statutes and Constitution of the State of Oklahoma, and remedies and relief provided under the common law.

5. The Court has subject matter jurisdiction over federal questions pursuant to 28 U.S.C. § 1331 and § 1343 over Plaintiffs' causes of action arising under 42 U.S.C. § 1983.

6. Venue is proper in the United States District Court, Western District of Oklahoma, pursuant to 28 U.S.C. § 1391(b)(1) because, upon information and belief, all Defendants reside in this state within the Western District. Venue is proper in the Western District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## PARTIES

7. At all relevant times, BENNIE EDWARDS, deceased, was a citizen of the United States and a resident of Oklahoma City, Oklahoma.

8. KIMBERLE THOMPSON and JUANITA HILL were appointed Co-Administrators of the Estate of BENNIE EDWARDS, deceased, on July 26, 2021 in Oklahoma County District Court Case No. PB-2021-819.

9. Defendant CITY OF OKLAHOMA CITY is a governmental entity organized and existing under the laws of the State of Oklahoma and is a political entity of the State of Oklahoma. At all relevant times, Defendant CITY OF OKLAHOMA CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Oklahoma City Police Department (hereinafter "OKCPD") and its employees and agents complied with the laws of the United States and the State of Oklahoma.

10. At all times, Defendant CITY OF OKLAHOMA CITY possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the OKCPD and of its employees, agents, contractors and/or servants.

11. In this case, Defendant CITY OF OKLAHOMA CITY acted through agents, employees, servants, and contractors, including its policymakers and Defendants KEITH DUROY and CLIFFORD HOLMAN.

12. At all relevant times, Defendant Sergeant KEITH DUROY was a police officer with OKCPD, and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983.

13. At all relevant times, Defendant Sergeant CLIFFORD HOLMAN was a police officer with OKCPD, and was acting under color of state law. He is sued in this action in his individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983.

14. At all relevant times, Defendant Sergeants KEITH DUROY and CLIFFORD HOLMAN were acting under color of law, in the course of their employment, and with the complete authority and ratification of Defendant CITY OF OKLAHOMA CITY.

## FACTUAL BACKGROUND

15. On the afternoon of December 11, 2020, BENNIE EDWARDS ("Mr. Edwards") was shopping at Extra Cash Gold & Loan, 2111 West Heffner Road, Oklahoma City, Oklahoma.

16. Prior to December 11, 2020, Mr. EDWARDS was known to vendors near the 2100 block of Heffner Road because he regularly sold flowers in the area.

17. On and prior to December 11, 2020, Mr. EDWARDS was experiencing homelessness.

18. On and prior to December 11, 2020, Mr. EDWARDS suffered from a long history of bipolar disorder and paranoid schizophrenia.

19. Prior to December 11, 2020, Mr. EDWARDS was found not to meet the statutory requirements for competence by a forensic examiner.

20. During the afternoon of December 11, 2020, police were called to Extra Cash Gold & Loan because Mr. EDWARDS was allegedly bothering customers.

21. Mr. EDWARDS, who was experiencing homelessness on December 11, 2020, had his possessions on the sidewalk in front of a vacant storefront slightly west of Extra Gold Cash & Loan.

22. Shortly after 12:00 p.m., Defendant Sergeant KEITH DUROY responded to the scene and encountered Mr. EDWARDS with a knife and a can of soda in his hands outside Extra Cash Gold & Loan.

23. Mr. EDWARDS was exhibiting signs of mental illness and confusion when Defendant DUROY pulled up to the Extra Cash Gold & Loan.

24. Defendant DUROY then exited his OKCPD vehicle and spoke with Mr. EDWARDS.

25. At that time, Mr. EDWARDS was experiencing emotional distress and, upon information and belief, acute symptoms of schizophrenia and bipolar disorder.

26. Twenty-five (25) seconds after Defendant DUROY arrived on the scene, he drew his OKCPD-issued firearm and pointed it at Mr. EDWARDS, exacerbating Mr. EDWARDS' fear and emotional distress.

27. Mr. EDWARDS asked Defendant DUROY to leave him alone, telling Defendant DUROY "you can go, you can go."

28. After briefly walking towards Defendant DUROY, Mr. EDWARDS then turned and walked away of his own volition from Defendant DUROY.

29. Defendant DUROY then used his OKCPD radio to request backup and asked for an officer with a Taser. Defendant DUROY stated to dispatch, "he's got a knife in his hand and he keeps coming at me with it" although body worn camera shows that Mr. EDWARDS had walked away of his own volition and returned to his possessions on the sidewalk at the time Defendant DUROY made this statement.

30. Mr. EDWARDS continued to tell Defendant DUROY to "go" while sitting near his possessions.

31. For nearly two minutes thereafter, Mr. EDWARDS sat peacefully and quietly on the sidewalk while Defendant DUROY waited for backup to arrive.

32. During that time, no members of the general public or OKCPD officers approached Mr. EDWARDS, nor did Mr. EDWARDS move away from his possessions on the sidewalk.

33. During that time, Defendant DUROY kept his OKCPD-issued firearm drawn.

34. During that time, Defendant DUROY did not attempt to explain or tell Mr. EDWARDS why he was there.

35. Mr. EDWARDS remained calm and seated near his possessions until a second OKCPD Officer, Michael Smith, arrived in a quickly moving vehicle, further agitating Mr. EDWARDS.

36. Mr. EDWARDS again began asking the officers to leave him alone, telling them "Y'all can go."

37. Officer Smith then drew his OKCPD-issued firearm, exacerbating Mr. EDWARDS' fear and emotional distress.

38. Mr. EDWARDS also asked, "what y'all gonna do to me?" Much of what Mr. EDWARDS was saying to the officers was unintelligible, as Mr. EDWARDS was clearly exhibiting symptoms of his mental illnesses.

39. Officer Smith answered, "we don't know."

40. Mr. EDWARDS remained on the sidewalk near his possessions and continued to attempt to communicate with the two officers.

41. Shortly thereafter Defendant Sergeant CLIFFORD HOLMAN arrived at the scene, began yelling commands at Mr. EDWARDS before he exited his cruiser, and drew his OKCPD-issued taser and pointed it at Mr. EDWARDS, exacerbating Mr. EDWARDS' fear and emotional distress.

42. Mr. EDWARDS, exhibiting confusion, asked "what are you doing here?" to Defendant HOLMAN, then pointed to Officer Smith and said "what's he doing there?"

43. The three officers formed a semicircle in front of Mr. EDWARDS and began yelling commands.

44. As the three OKCPD officers yelled commands at him, Mr. EDWARDS stepped from the sidewalk, still speaking to the officers, while all three officers, including Defendants DUROY and HOLMAN, pointed their OKCPD-issued weapons at Mr. EDWARDS, exacerbating Mr. EDWARDS' fear and emotional distress.

45. Defendant CLIFFORD HOLMAN yelled "You're getting tased," and then deployed his OKCPD-issued taser at Mr. EDWARDS.

46. Officer Smith then deployed OKCPD-issued pepper spray at Mr. EDWARDS.

47. Mr. EDWARDS put his hands up and moved backwards onto the sidewalk away from the officers, exhibiting confusion, fear, and emotional distress.

48. All three OKCPD officers began to converge on Mr. EDWARDS with their OKCPD-issued service weapons pointed at him.

49. Defendant HOLMAN then deployed his OKCPD-issued taser once again, striking Mr. EDWARDS.

50. All three officers were closing in on Mr. EDWARDS with their OKCPD-issued weapons pointed at him, while Mr. EDWARDS continued to retreat toward his possessions on the sidewalk.

51. After the second taser deployment, Mr. EDWARDS had nowhere to go to protect himself, so he ran away from Defendant HOLMAN and the taser.

52. Defendant HOLMAN yelled "Shoot!" as soon as Mr. EDWARDS began to run.

53. Defendant DUROY fired three (3) shots, striking Mr. EDWARDS.

54. At that time, Mr. EDWARDS was turning away from the OKCPD officers.

55. Injured, Mr. EDWARDS continued to attempt to run away from the Defendant officers and toward the open parking lot, passing between Defendant DUROY and Officer Smith.

56. After Mr. EDWARDS had cleared the officers and was in the open, running away from the officers, Defendant HOLMAN dropped the taser, drew his OKCPD-issued firearm, and fired several shots, striking Mr. EDWARDS multiple times in the back.

57. Mr. EDWARDS fell to the ground, lying face-up, with multiple obvious bullet wounds.

58. After Mr. EDWARDS fell to the ground, Defendant HOLMAN, and another officer who arrived approximately 20 seconds after Mr. EDWARDS was shot, flipped Mr. EDWARDS' limp body onto his stomach and handcuffed his hands behind his back, despite Mr. EDWARDS' multiple gunshot wounds.

59. The five OKCPD officers on scene stood around Mr. EDWARDS without providing him medical assistance.

60. Bystanders and witnesses asked the officers to help Mr. EDWARDS as he laid in the parking lot.

61. One bystander asked if she could help Mr. EDWARDS herself.

62. Defendant HOLMAN told the newly-arrived officers "Yeah, he's hit several times."

63. Defendant HOLMAN checked Mr. EDWARDS' pulse for the first time more than two minutes after Mr. EDWARDS had fallen to the ground after being shot.

64. Defendant HOLMAN and another officer removed Mr. EDWARDS' handcuffs nearly a minute after Defendant HOLMAN determined that Mr. EDWARDS did not have a pulse.

65. Mr. EDWARDS died from his gunshot wounds in the parking lot.

66. Defendant HOLMAN used inappropriate, unwarranted, and unjustifiable force against BENNIE EDWARDS when Defendant HOLMAN shot him in the back knowing Mr. EDWARDS was retreating.

67. Defendant DUROY used inappropriate, unwarranted, and unjustifiable force against BENNIE EDWARDS when Defendant DUROY shot him multiple times when Mr. EDWARDS ran away from the Defendant officers.

68. In committing the acts alleged in the preceding paragraphs, Defendants HOLMAN and DUROY were members of, and acting as agents and employees of, the Oklahoma City Police Department.

69. Defendant HOLMAN has been charged with manslaughter of the first degree for shooting BENNIE EDWARDS as he ran away.

## **OKLAHOMA CITY POLICE DEPARTMENT'S CUSTOM AND PRACTICE OF USING EXCESSIVE FORCE DISPROPORTIONATELY AGAINST MINORITIES, UNARMED, AND MENTALLY ILL INDIVIDUALS**

70. In 2013, an OKCPD officer was sentenced to four years in prison for shooting an unarmed teenager as he ran away.

71. In 2017, an OKCPD officer shot and killed a deaf man when he failed to comply with verbal commands after bystanders told the officers that the man could not hear.

72. In 2019, an OKCPD sergeant was sentenced to ten years in prison for shooting an unarmed man on the verge of suicide.

73. In 2020, upon information and belief, five OKCPD officers shot a fifteen-year-old robbery suspect thirteen times as he was actively complying with officers' commands to put down his weapon.

74. As of 2020, upon information and belief, the OKCPD has one of the highest rates of police killings in the United States with nearly 70% of the victims being nonwhite despite nonwhites comprising only 33% of the City's population.

75. A Black person was 5.7 times more likely to be killed by police than a white person in Oklahoma City from 2013 to 2020; Black people comprised 48% of the total number of individuals killed by OKCPD officers from 2013 – 2020 despite making up only 14 percent of Oklahoma City's population. These racial disparities are greater in the OKCPD than in 73% of police departments.

76. OKCPD averaged 3.8 police killings per every 10,000 arrests. This rate of police killings per arrest is higher than 96% of police departments.

77. Nevertheless, almost no excessive force complaints against OKCPD officers have been sustained after review by OKCPD's final policymakers.

**POLICIES OF THE OKLAHOMA CITY POLICE DEPARTMENT REGARDING MENTALLY ILL INDIVIDUALS.**

78. OKCPD has certain policies and procedures in place for officers who encounter mentally ill individuals during their tour of duty.

79. At all relevant times, Section 215.60 of the CITY OF OKLAHOMA CITY Police Operations Manual instructed OKCPD officers that "the officer who arrives first on the scene should immediately ask for backup and if possible, a CIT officer, once it is apparent the subject is suffering from a mental illness."

80. Further, at all relevant times, Section 215.60 instructed OKCPD officers to "move slowly," "take time" and "carefully assess the situation" when it is clear that the individual is suffering from a mental illness, and to "[r]emember that mental health consumers are generally very frightened."

81. Finally, Section 215.60 instructed OKCPD officers:

    > Do not rely on your firearm. The threat of a gun is quite meaningless to a person who is mentally ill. The individual may grab it and use it or you may be tempted to use it. A firearm should be used only in the very rare situation when it is necessary to save a life.

82. At all relevant times, the OKCPD crisis intervention program, which upon information and belief gives field officers the tools to understand and serve people with mental illness, was a voluntary program.

83. Upon information and belief, Defendant Sergeants HOLMAN and DUROY had not completed crisis intervention training prior to responding to the scene where they shot Mr. EDWARDS.

84. Upon information and belief, only 25% of the entire OKCPD is certified in crisis intervention.

85. Upon information and belief, Defendant Sergeants HOLMAN and DUROY were inadequately trained and supervised such that they were incapable of following Defendant CITY OF OKLAHOMA CITY's policies and procedures as enumerated in Section 215.60 of the Police Operations Manual regarding interactions with mentally ill individuals.

**COUNT I – 42 U.S.C. §1983—Excessive Force**
*Plaintiffs v. Defendant Sergeants Clifford Holman and Keith Duroy,
in their individual capacities*

86. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully stated and pled herein.

87. At all relevant times, Defendants HOLMAN and DUROY were authorized officers, agents, and/or employees of OKCPD, and were acting in the course of their employment and under color of state law.

88. At all relevant times, it was the duty of Defendant Sergeants HOLMAN and DUROY, individually and as officers, agents and/or employees of OKCPD, to refrain from using unreasonable excessive force against others, including Mr. EDWARDS.

89. On December 11, 2020, in breach of said duty, Defendant Sergeants HOLMAN and DUROY used unreasonable and excessive force in violation of the United States Constitution by engaging in the following acts or omissions:

    a. Defendants used a level of force that Defendants knew, or should have known, was excessive when they shot Mr. EDWARDS in the back without proper justification;

    b. Defendants used a level of force that Defendants knew, or should have known, was excessive to use against a person who was clearly exhibiting signs of mental illness;

    c. Defendants used an unreasonable amount of force in relation to the threat posed by Mr. EDWARDS, who was exhibiting clear signs of mental illness, running away from Defendants after being tased multiple times and pepper sprayed, and was not threatening the life or safety of any officer or individual.

90. The aforementioned conduct of Defendant Sergeants HOLMAN and DUROY constituted unreasonable excessive force in violation of the Fourth Amendment of the United States Constitution.

91. At all relevant times, the actions of Defendant Sergeants HOLMAN and DUROY were objectively unreasonable and were undertaken intentionally with deliberate indifference to Mr. EDWARDS' Constitutional rights.

92. At all relevant times, the actions of Defendant Sergeants HOLMAN and DUROY would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the time that Defendants used such force.

93. At all relevant times, the actions of Defendant Sergeants HOLMAN and DUROY were undertaken with malice, willfulness, and reckless indifference to the rights of Mr. EDWARDS.

94. As a proximate cause of Defendant Sergeants HOLMAN and DUROY's unreasonable and excessive use of force, Mr. EDWARDS experienced injuries, including physical and psychological pain and suffering.

95. As a further proximate cause of Defendant Sergeants HOLMAN and DUROY's unreasonable and unjustified excessive use of force, Mr. EDWARDS ultimately died.

96. As a further proximate cause of Defendant Sergeants HOLMAN and DUROY's unjustified and excessive use of force, the Estate of BENNIE EDWARDS suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

97. As a direct and proximate result of the willful, malicious and vicious conduct and unreasonable, excessive force of Defendant Sergeants HOLMAN and DUROY described above, Mr. EDWARDS suffered a deprivation of his constitutionally protected rights leading to his death, allowing Plaintiffs to recover on behalf of the Estate of BENNIE EDWARDS the following damages against Defendants:

    a. Funeral and burial expenses;

    b. Medical expenses;

    c. Decedent's pain and suffering before death;

    d. Loss of earnings based upon the probable duration of the Decedent's life had the deprivation of his constitutionally protected rights leading to his death not occurred;

    e. Decedent's loss of consortium;

    f. Punitive damages; and

    g. All other damages allowable and recognized in Oklahoma common law tort actions.

WHEREFORE, Plaintiffs, KIMBERLE THOMPSON and JUANITA HILL, as Co-Administrators of the Estate of BENNIE EDWARDS, deceased, pray for judgment against Defendants CLIFFORD HOLMAN and KEITH DUROY in an amount in excess of $75,000.00, plus pre-judgment and post-judgement interest, and costs, including reasonable attorney fees; and for punitive damages in an amount in excess of $75,000.00 to deter Defendants from committing such willfully malicious and/or deliberately indifferent conduct in the future and to apprise the public at large that does not condone such actions.

### COUNT II – 42 U.S.C. §1983 – Municipal Liability under *Monell*
*Plaintiffs v. Defendant City of Oklahoma City*

98. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully stated and pled herein.

99. The conduct by Defendant Sergeants HOLMAN and DUROY in this Count and described herein constituted excessive and deadly force in violation of the United States Constitution, as incorporated through the Fourteenth Amendment.

100. At all relevant times, Defendants HOLMAN and DUROY were OKCPD Sergeants acting under and pursuant to the CITY's customs, policies, procedures and/or authorizations, directions and/or control of the CITY OF OKLAHOMA CITY.

101. Pursuant to Oklahoma City Municipal Code § 43-4, the OKCPD Chief of Police and the CITY OF OKLAHOMA CITY Council are final policymakers for OKCPD.

102. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of mentally ill arrestees, detainees, and the like during arrest, including but not limited to the unreasonable use of deadly force via firearm.

103. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, fostered or ratified a number of customs, patterns, or practices that condoned and required OKCPD officers to treat the members of minority communities of Oklahoma differently, including but not limited to implementing deadly force at a higher rate against minority men who did not pose a threat to officers.

104. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

105. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of arrestees, detainees, and the like, failed to require OKCPD officers to complete lifesaving mental health crisis intervention training at any time.

106. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of mentally ill arrestees, detainees, and the like, had knowledge that only 25% of its responding officers completed lifesaving mental health crisis intervention training and allowed this lack of training to remain the custom of the OKCPD.

107. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of mentally ill arrestees, detainees, and the like, allowed 75% of its responding officers to respond to apparent mental health crises without lifesaving mental health crisis intervention training.

108. Defendant CITY OF OKLAHOMA CITY's deliberate choice not to require its officers to complete lifesaving mental health crisis intervention training is part of its larger custom, policy, or practice of failing to properly train, supervise, or adequately allocate resources to its officers resulting in unconstitutional, unlawful, and otherwise improper conduct, and thereby encouraged OKCPD officers, including Defendants HOMAN and DUROY, to continue to respond to apparent mental health crises without the necessary skillset and training.

109. As a direct and proximate result of the unconstitutional policies, practices, and customs of Defendant CITY OF OKLAHOMA CITY defined herein, Mr. EDWARDS sustained substantial injuries and ultimately died.

110. As a direct and proximate result of the wrongful acts and omissions of Defendant CITY OF OKLAHOMA CITY, Mr. EDWARDS sustained substantial injuries and ultimately died.

WHEREFORE, Plaintiffs, KIMBERLE THOMPSON and JUANITA HILL, as Co-Administrators of the Estate of BENNIE EDWARDS, deceased, pray for judgment against Defendant CITY OF OKLAHOMA CITY in an amount in excess of $75,000.00, plus pre-judgment and post-judgement interest, costs, including reasonable attorney fees; and for all such other relief the Court deems fair and equitable.

### COUNT III – 42 U.S.C. §1983 – *Canton Liability*
*Plaintiffs v. Defendant City of Oklahoma City*

111. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully stated and pleaded herein.

112. Defendant CITY OF OKLAHOMA CITY failed to properly train and supervise Defendants HOLMAN and DUROY and its other OKCPD officers, on matters including but not limited to, those related to the reasonable and appropriate use of deadly force in the field and properly responding to apparent mental health crises.

113. Effectuating an arrest, using force to effectuate an arrest, and responding to apparent mental health crises is a usual and recurring situation which OKCPD officers and other agents encounter on a regular basis.

114. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY was aware of a need for its OKCPD officers to receive more training regarding proper responses to apparent mental health crises.

115. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of arrestees, detainees, and the like, failed to require its officers to complete lifesaving mental health crisis intervention training at any time.

116. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of mentally ill arrestees, detainees, and the like, had

knowledge that only 25% of its responding OKCPD officers completed lifesaving mental health crisis intervention training and allowed this to remain the custom for OKCPD officers.

117. On or prior to December 11, 2020, Defendant CITY OF OKLAHOMA CITY, with deliberate indifference to the rights of mentally ill arrestees, detainees, and the like, allowed 75% of its responding OKCPD officers to respond to apparent mental health crises without lifesaving mental health crisis intervention training.

118. Defendant CITY OF OKLAHOMA CITY was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of lifesaving mental health crisis intervention training for OKCPD officers.

119. Defendant CITY OF OKLAHOMA CITY was deliberately indifferent and exhibited reckless disregard with respect to the aforementioned potential violation of constitutional rights.

120. The failure to require lifesaving mental health crisis intervention training constituted official CITY OF OKLAHOMA CITY policies, practices, or customs.

121. As a direct and proximate result of the wrongful acts and omissions of Defendant CITY OF OKLAHOMA CITY, Mr. EDWARDS sustained substantial injuries and ultimately died.

WHEREFORE, Plaintiffs, KIMBERLE THOMPSON and JUANITA HILL, as Co-Administrators of the Estate of BENNIE EDWARDS, pray for judgment against Defendant CITY OF OKLAHOMA CITY in an amount in excess of $75,000.00, plus pre-judgment and post-judgement interest, and costs, including reasonable attorney fees; plus pre-judgment and

post-judgement interest, costs, including reasonable attorney fees; and for all such other relief the Court deems fair and equitable.

Respectfully Submitted,

By:    /s/ Rachel E. Gusman
Daniel B. Graves
OBA#16656
W. Chad McLain
OBA#19349
Rachel E. Gusman
OBA# 22161
(Attorneys for Plaintiffs)
**GRAVES MCLAIN PLLC**
4137 S. Harvard Ave., Ste. F
Tulsa, OK 74135
Telephone: 918-359-6600
dan@gravesmclain.com
chad@gravesmclain.com
rachel@gravesmclain.com

and

Antonio M. Romanucci (*pro hac vice* admission pending)
Illinois Bar No. 6190290
Bhavani K. Raveendran (*pro hac vice* admission pending)
Illinois Bar No.: 6309968
Ian P. Fallon (*pro hac vice* admission pending)
Illinois Bar No.: 6332303
(Attorneys for Plaintiffs)
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street, Suite 900
Chicago, Illinois 60654
Telephone: 312-458-1000
aromanucci@rblaw.net
b.raveendran@rblaw.net
ifallon@rblaw.net

and

Ben Crump (*pro hac vice* admission pending)
Washington D.C. Bar No. 1552623
(Attorneys for Plaintiffs)
**BEN CRUMP LAW, PLLC**

717 D Street N.W., Suite 310  
Washington, D.C. 20004  
ben@bencrump.com